1
2
3
4
5
6
7
8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ANNA M. PIATZ,

11          Plaintiff,                    No. CIV S-08-2666 JAM EFB

12      vs.

13
   COMMISSIONER OF
14   SOCIAL SECURITY,                     FINDINGS AND RECOMMENDATIONS

15

16          Defendant.
   _____/

17      Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

18   ("Commissioner") denying her application for Supplemental Security Income ("SSI").  For the

19   reasons that follow, the court recommends that plaintiff's motion for summary judgment be

20   DENIED and the Commissioner's cross-motion for summary judgment be GRANTED.

21   BACKGROUND

22      Plaintiff, born February 2, 1961, alleged she was unable to work due to arm, shoulder,

23   neck and back pain, dizziness, headaches, fibryomyaglia and depression.  Pl.'s Reply at 4;

24   Administrative Record ("AR") at 40.  Plaintiff protectively filed a Title II and Title XVI

25   application for SSI on April 21, 2005.  AR at 17.  The claims were denied initially on September

26   ////

1

22, 2005, and upon reconsideration on February 16, 2006. *Id.*[1] On March 21, 2006, plaintiff

requested a hearing. *Id.* A hearing was held before ALJ Charles D. Reite via video conference

on June 14, 2007. *Id.* In a decision dated October 11, 2007, the ALJ denied the claim, making

the following findings:[2]

> 1.    The claimant meets the insured status requirements of
>       Social Security through March 31, 2007.
>
> 2.    The claimant has not engaged in substantial gainful activity
>       since January 15, 2003, the alleged onset date.  (20 CFR
>       404.1520(b), 404.1571 et seq., 416.920(b) and 416.971 et
>       seq.).
>
> 3.    The claimant has the following severe impairments:

---

[1] Plaintiff also filed prior applications under Title II and Title XVI in 2004 that were denied and plaintiff did not appeal. AR at 17. Plaintiff also filed prior applications for Titles II and XVI in 1990, that were denied and plaintiff did not appeal. *Id.*

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. *See* 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Bowen*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

2

multiple myalgias of undetermined etiology (Exhibits 4F, 9F, 14F); and post traumatic stress disorder (PTSD) (Exhibit 5F) (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1(20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity (RFC) to perform light work with frequent use of the bilateral upper extremities for reaching handling, fingering and feeling; no power grasping; mild limitation in concentration, persistence and pace; and limited public contact.

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.    The claimant was born on February 2, 1961 and was 41 years old, which is defined as younger individual age 18-49, on the alleged disability onset date. (20 CFR 404.1563 and  416.963).

8.    The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11.   The claimant has not been under a disability, as defined in the Social Security Act, from January 15, 2003, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AR at 19-24.

////

////

ISSUES PRESENTED

Plaintiff has raised the following issues:

A.  The Appeal Council's "no reason to review" order must be revered and remanded for redecision by the Appeals Council.

B.  The ALJ erred in failing to make findings as to the degree of limitations of plaintiff's physical impairments including failure to discuss plaintiff's fibromyalgia and PTSD.

C.  The ALJ failed to properly weigh Dr. Murphy's opinion.

D.  The ALJ failed to properly weigh LCSW Cervantes' opinion.

E.  The ALJ failed to provide specific rationale for rejecting plaintiff's testimony.

F.  The weight of all of the medical evidence fails to support the ALJ's finding regarding plaintiff's RFC.

Pl.'s Mot. for Summ. J. at 5.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007), *quoting Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

////

////

4

ANALYSIS

    A.  Appeals Council

        Plaintiff contends that the Appeal Council's "no reason to review" order must be reversed and remanded for redecision by the Appeals Council.

        Plaintiff argues that pursuant to *Ramirez v. Shalala*, 8 F.3d 1449 (9th Cir. 1993), the district court has the authority to review the Appeals Council's denial of review, and to remand for a rehearing by the Appeals Council.  The court disagrees with plaintiff's reading of *Ramirez*. Federal courts only have jurisdiction to review the final decisions of Commissioner.[3]  *See* 42 U.S.C. § 405(g); *See Razey v. Heckler,* 785 F.2d 1426, 1427-1429 (9th Cir.1986), *modified*, 794 F.2d 1348 (9th Cir. 1986).  When the Appeals Council denied review of the ALJ's decision, it made that decision final.  *Ramirez*, at 1451.  Thus, the court reviews the ALJ's decision, not the decision of the Appeal's Council.  *Ramirez* does provide for the district court to consider the additional materials that were presented to the Appeals Council.  *Id.*  Accordingly, the additional materials submitted to the Council are consider and addressed in the discussion below.

    B.  Fibromyalgia and PTSD

        Plaintiff argues that the ALJ erred in failing to make specific findings with respect to plaintiff's fibromyalgia and PTSD.  Pl.'s Mot. for Summ. J. at 10, 13.

            Fibromyalgia

        Plaintiff points to a few pages of doctors notes where fibromyalgia is included in the assessment in February 2007.  AR at 357-58.  While the ALJ did not reference fibromyalgia in the decision, he found that plaintiff had a severe impairment of multiple myalgias of undetermined etiology that caused significant limitations on plaintiff's ability to perform basic work functions.  AR at 20.  The ALJ also considered this in finding that plaintiff could only

---

[3]  Although a decision by the Appeals Council to reject the ALJ's credibility findings requires a careful review of the Council's explanation for doing so, *Howard v. Heckler*, 782 F.2d 1484, 1487 (9th Cir.1986), that was not the case here.

perform light work in the RFC.  AR at 21.  While not using the term 'fibromyalgia', the ALJ referenced the associated symptoms of fibromyalgia, most notable the issue of pain.  To the extent that plaintiff argues the ALJ erred in the step 2 analysis, any error, if there was one, was harmless, as it was found that the multiple myalgias was a severe impairment.  *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1991) (harmless error rule applies to review of administrative decisions regarding disability).

The ALJ also properly assessed plaintiff's RFC.  The ALJ cited to the internal medicine consultative examination of Dr. Garfinkel, on August 2, 2005, that found little impairment.  AR at 21, 190.  Dr. Garfinkel identified low back pain, multiple pain in joints and probably secondary to mild osteoarthritis, but still felt that plaintiff could lift or carry 50 pounds occasionally and 25 pounds regularly, stand, walk or sit 6 hours in an 8 hour day and can climb, stoop, kneel or crouch occasionally.  AR at 190. Despite this finding, the ALJ still concluded that plaintiff it limited to less than the full range of light work.  AR at 21.

The ALJ also noted that despite all of plaintiff's complaints regarding pain, there was very little objective findings in the medical records.  *Id*.  Plaintiff cites to medical records that show mild degenerative changes anterior spurring in the lumbar spine and a CT scan that revealed annular bulging, however, plaintiff has failed to demonstrate that any of these findings are in conflict with the beneficial RFC found by the ALJ.  Thus, the ALJ's specific findings were supported by substantial evidence in the record.

PTSD

Plaintiff also challenges the ALJ's findings regarding plaintiff's PTSD alleging that the ALJ failed to discuss the severity of the impairment.  Pl.'s Mot. at 13.  Plaintiff states that the ALJ ignored the psychiatric consultative examiner's findings of Dr. Andrews and failed to reference the state agency reports of Dr. Rosen and Dr. McAuley.  Pl.'s Mot. for Summ. J. at 13; Pl.'s Reply at 11.

////

1     Dr. Andrews found that plaintiff can follow simple commands but complex commands

2 may be more difficult and she has the ability to interact socially with co-workers and supervisors

3 but she would be more anxious around the public.  AR at 195.  Dr. Andrews also found that

4 plaintiff has limited math skills but can manage her own funds.  *Id*.

5     Plaintiff is correct that the ALJ did not reference Dr. Andrew's report in the decision.

6 However, the ALJ found that plaintiff had mild difficulties with respect to social functioning and

7 she had mild difficulties with regard to concentration, persistence and pace.  AR at 20.  The ALJ

8 reflected these findings in the RFC and stated that plaintiff should have limited public contact.

9 AR at 21.

10     While the ALJ did not specifically cite Dr. Andrew's report, Dr. Andrews findings were

11 essentially adopted by the ALJ.  The ALJ also did not reference the state agency reports of Dr.

12 Rosen and Dr. McAuley.  These reports assessed plaintiff with mild to moderate limitations.  AR

13 at 204-09.  As with Dr. Andrew's report, the ALJ reflected these assessments in the decision and

14 in the RFC.  Thus, any error by the ALJ was harmless.

15     C.   Dr. Murphy's Opinion

16     Plaintiff contends that the ALJ did not properly weigh Dr. Murphy's opinion.  Pl.'s Mot.

17 for Summ. J. at 14.  Dr. Murphy was one of plaintiff's treating doctors prior to the ALJ issuing

18 the decision and Dr. Murphy issued a report after the ALJ decision that stated plaintiff had a

19 permanent disability that prevented her from working.  AR at 537.  Defendant argues that Dr.

20 Murphy's opinion supports the ALJ's RFC finding.  Def.'s Opp'n at 10.

21     The ALJ must make fairly detailed findings in support of his decision to permit courts to

22 review those decisions intelligently.  *See Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981).

23 The ALJ, however, need not discuss all evidence presented.  Rather, the ALJ must explain why

24 "significant probative evidence has been rejected."  *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir.

25 1981).  Here, the evidence which the ALJ ignored was neither significant nor probative.

26 ////

1    Plaintiff argues that the ALJ's decision is silent with respect to various of Dr. Murphy's

2    notes that discussed, peripheral neuropathy, AR at 220, possible Reynaud's syndrome, AR at

3    241, fibromyalgia, AR at 357, and cervical spine DJD and possible thoracic outlet syndrome, AR

4    at 432.

5    The transcript in the instant case is nearly 600 pages, the majority containing medical

6    records.  There are more than 15 such entries from Dr. Murphy concerning a wide range of

7    medical ailments, similar to those stated by plaintiff above, and the ALJ did not reference every

8    single report.  AR at 220, 224, 232, 235, 273, 280, 282, 354, 357, 358, 364, 376, 381, 389, 398,

9    401.[4]  However, there is no indication that any of the ailments mentioned by plaintiff were

10   significant, as many are mentioned only once or twice and then the record is silent.   A finding of

11   disability involves an impairment that has lasted or can be expected to last for a continuos period

12   of no less than 12 months.  Moreover, plaintiff has the burden of proving that she has a severe

13   impairment at step two of the sequential evaluation process.  An impairment is severe if it

14   significantly limits one's ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c),

15   416.920(c).

16   Plaintiff has failed to show that any of these ailments were a severe impairment or were

17   not related to the severe impairments found by the ALJ, such as the fibromyalgia discussed in the

18   prior section.  The records show that plaintiff was being treated by Dr. Murphy for all these

19   problems and there is no indication that the treatment was not effective.  With respect to

20   depression, plaintiff was being provided with anti-depressants with reports that she was feeling

21   better.  AR at 224, 232, 280.  If any of these ailments were more severe, the record does not

22   reflect concern from plaintiff's doctors.  Most importantly, despite plaintiff's medical problems,

23   Dr. Murphy encouraged plaintiff to seek employment in May 2006, saying she would be good at

24   a caregiving job.  AR at 439.  Furthermore, "the ALJ is the final arbiter with respect to resolving

25

26   [4] There are also additional entries from other of plaintiff's treating doctors at Shasta
     Community Health.

1    ambiguities in the medical evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir.

2    2008).

3        Plaintiff also faults the Appeals Council for failing to give proper weight to Dr. Murphy's

4    opinion, provided after the ALJ decision, that plaintiff is disable and cannot work.[5]  Dr. Murphy

5    indicated on a form that plaintiff has a physical and mental incapacity that prevents or

6    substantially reduces her ability to work.  Tr. at 537.  Dr. Murphy attributed this to fibromyalgia

7    and depression and indicated that this would be permanent.  *Id*.  Also included with this opinion

8    were approximately a dozen pages of doctors notes and test results.  Most of the doctors notes

9    are difficult to read and there is no indication what circumstances changed in the prior year when

10   Dr. Murphy initially recommended that plaintiff should obtain employment and then stated that

11   plaintiff was unable to work.  Plaintiff's depression was being treated with positive results and

12   the ALJ acknowledged that plaintiff's pain issues constituted a severe impairment.  AR at 20,

13   224, 232, 280.  A single report stating that plaintiff is disabled without proper supporting

14   evidence is insufficient.

15       Furthermore, Dr. Murphy's post ALJ decision report may be "less persuasive since it was

16   obtained by [plaintiff] only after the ALJ issued an adverse determination."  *Weetman v.*

17   *Sullivan*, 877 F.2d 20, 23 (9th Cir.1989) (citing *Key v. Heckler*, 754 F.2d 1545, 1550 (9th Cir.

18   1985) (refusing to remand for reconsideration of "new" evidence because when the claimant

19   "failed to succeed on his disability claim in the agency and district court hearings, he sought out

20   a new expert witness who might better support his position"); *see also Macri v. Chater,* 93 F.3d

21   540, 544 (9th Cir.1996) (noting that "because Dr. Hanbery's 1993 reports were issued after the

22   Commissioner's decision . . . they are less than persuasive.").

23   ////

24

     _____

25       [5] The court will also address in this section, plaintiff's argument in Section F that the
     ALJ's light work RFC was unsupported by Dr. Murphy's report submitted after the ALJ
26   decision.

1    Ultimately, many of Dr. Murphy's findings were incorporated into the RFC and the

2  report issued after the ALJ's decision is insufficient.

3        D.  LCSW Cervantes' opinion

4        Plaintiff alleges that the ALJ did not properly weigh the opinion of the LCSW that

5  treated plaintiff.

6        The weight given to medical opinions depends in part on whether they are proffered by

7  treating, examining, or non-examining professionals.  *Holohan v. Massanari*, 246 F.3d 1195,

8  1201 (9th Cir. 2001).  However, the regulations differentiate between opinions from "acceptable

9  medical sources" and "other sources."  *See* 20 C.F.R. §§ 404.1513(a), (e); 416.913(a), (e).  For

10 example, licensed psychologists are considered "acceptable medical sources," and social workers

11 are considered "other sources." *Id*.  Medical opinions from "acceptable medical sources," have

12 the same status when assessing weight.  *See* 20 C.F.R. §§ 404.1527(a)(2), (d); 416.927(a)(2), (d).

13 No specific regulations exist for weighing opinions from "other sources."  Opinions from "other

14 sources" accordingly are given less weight than opinions from "acceptable medical sources."

15       Ernesto Cervantes, the LCSW, found that plaintiff was unable to meet competitive

16 standards with respect to mental abilities and aptitude needed for particular jobs.  AR at 330.

17 Cervantes issued this report on January 22, 2006.  AR at 331.  Cervantes only first met with

18 plaintiff on June 8, 2006.  AR at 327.  Despite Cervantes' findings that plaintiff could not work,

19 he assigned her a GAF of 60, which indicates only moderate symptoms.  AR at 327.  The ALJ

20 specifically noted that Cervantes' report was based primarily on plaintiff's subjective complaints

21 as opposed to objective findings.  AR at 21.  In the decision, the ALJ specifically described

22 various reasons for not crediting plaintiff's subjective complaints, both physical and mental

23 complaints.[6]

24 ////

25 ──────────────

26       [6] The following section describes in detail the ALJ's reasoning for not crediting
   plaintiff's subjective complaints.

1    To demonstrate that she is disabled due to depression, it was incumbent upon plaintiff to

2    submit medically acceptable clinical and/or laboratory findings from an acceptable medical

3    source.  *See* 20 C.F.R. §§ 416.908, 416.912(c), 416.913(a), 416.928.  Cervantes' report is not an

4    acceptable source of medical evidence, as Cervantes is neither a physician nor a licensed

5    psychologist.  *See* 20 C.F.R. § 416.913(a) (listing acceptable medical sources).  As the ALJ

6    properly discussed his reasons for not crediting the report, plaintiff's claim is meritless.

7    　　　　E.  Plaintiff's testimony

8    　　　　Plaintiff next alleges that the ALJ erred by not providing specific rationale for rejecting

9    her testimony.

10   　　　　The ALJ determines whether a disability applicant is credible, and the court defers to the

11   ALJ who used the proper process and provided proper reasons.  *See Saelee v. Chater*, 94 F.3d

12   520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an explicit credibility

13   finding.  *Albalos v. Sullivan*, 907 F.2d 871, 873-74 (9th Cir. 1990); *Rashad v. Sullivan*, 903 F.2d

14   1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific,

15   cogent reason for the disbelief").

16   　　　　In evaluating whether subjective complaints are credible, the ALJ should first consider

17   objective medical evidence and then consider other factors.  *Vasquez v. Astrue*, 572  F.3d 586,

18   591 (9th Cir. July 8, 2009);  *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc).  The

19   ALJ may not find subjective complaints incredible solely because objective medical evidence

20   does not quantify them.  *Bunnell*, at 345-46.  If the record contains objective medical evidence of

21   an impairment reasonably expected to cause pain, the ALJ then considers the nature of the alleged

22   symptoms, including aggravating factors, medication, treatment, and functional restrictions.  *See*

23   *Vasquez*, 572 F.3d at 591.  The ALJ also may consider the applicant's:  (1) reputation for

24   truthfulness or prior inconsistent statements; (2) unexplained or inadequately explained failure to

25   seek treatment or to follow a prescribed course of treatment; and (3) daily activities.  *Smolen v.*

26   *Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *see generally* SSR 96-7P, 61 FR 34483-01; SSR

95-5P, 60 FR 55406-01; SSR 88-13.  Work records, physician and third party testimony about

nature, severity, and effect of symptoms, and inconsistencies between testimony and conduct,

may also be relevant.  *Light v. Social Security Administration*, 119 F.3d 789, 792 (9th Cir. 1997).

The ALJ may rely, in part, on his or her own observations, *see Quang Van Han v. Bowen*, 882

F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis.  *Marcia v.

Sullivan*, 900 F.2d 172, 177, n.6 (9th Cir. 1990).  Plaintiff is required to show only that her

impairment "could reasonably have caused some degree of the symptom."  *Vasquez*, 572 F.3d at

591 (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)); *Smolen*, 80 F.3d at

1282.  Absent affirmative evidence demonstrating malingering, the reasons for rejecting applicant

testimony must be specific, clear and convincing.  *Vasquez*, 572 F.3d at 591.

     In this case, the ALJ properly analyzed the evidence and provided clear and convincing

reasons for discounting plaintiff's credibility.  Most importantly, the ALJ noted the lack of

objective medical findings in the treatment record compared to plaintiff's subjective complaints.

AR at 21.  An internal medicine consultative examination in August 2005, found plaintiff had a

medium RFC, yet the ALJ still assessed plaintiff's RFC to less than the full range of light work.

AR at 21, 186-91.  The ALJ discussed how plaintiff received an extensive workup of studies, labs

and imaging studies in September 2005.  AR at 21, 237.  The results found generalized myalgias

but no other findings.  *Id*.  The ALJ cited to MRI's and x-rays of plaintiff conducted by Shasta

Community Health Center in 2006 that were normal with no problems.  AR at 21, 505-12.

     The ALJ also mentioned plaintiff's noncompliance with medical treatment when plaintiff

increased the dosage of her Cymbalta medication without consulting her treating physician.  AR

at 22.  Plaintiff also continued to smoke against the medical advice of several doctors.  AR at 21.

     The ALJ also described how plaintiff's stories and subjective complaints were confusing,

uncorroborated and did not make much sense.  AR at 21.  Plaintiff described unusual

circumstances involving a hurricane in Florida, a stolen van, stolen medicine, losing her mining

claim and shoveling gravel.  *Id*.  During the hearing before the ALJ, plaintiff had difficulty

recalling what years she worked certain jobs and even plaintiff's attorney seemed confused by plaintiff's answers.  AR at 553.

While plaintiff does not agree with the ALJ's findings, it is clear that the ALJ used the proper process and provided proper reasons for discounting plaintiff's testimony.  Courts give deference to the ALJ's assessment of plaintiff's testimony, as "[c]redibility determinations are the province of the ALJ." *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).  Despite not fully crediting plaintiff's subjective complaints, the ALJ still found that plaintiff had severe impairments and issued her RFC to include only light work.  Thus, the ALJ's analysis was proper and this claim must be denied.

F.  <u>Weight of the medical evidence does not support the RFC</u>

Finally, plaintiff argues that the ALJ's light work RFC is not supported by the report of Dr. Murphy submitted after the ALJ decision.  For the same reasons discussed above in Section C when previously discussing Dr. Murphy's report, this claim must be denied.

Accordingly, it is hereby RECOMMENDED that:

1.  Plaintiff's motion for summary judgment be denied;

2.  The Commissioner's cross-motion for summary judgment be granted; and

3.  Judgment be entered for the Commissioner.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  February 12, 2010.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE